UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00252-MOC

| | | |
|---|---|---|
| **MONICA R. ODOMS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#9)

and Defendant's Motion for Summary Judgment (#11).  The matter has been fully briefed and is

ripe for review. Having carefully considered such motions and reviewed the pleadings, the court

enters the following findings, conclusions, and Order.

## I.    PROCEDURAL HISTORY

Monica Odoms ("Plaintiff") applied for a period of Title II disability insurance benefits

and Title XVI Supplemental Security Income ("SSI") on February 9, 2012 with an alleged onset

date of March 12, 2007. (Tr. 81). Her claim was initially denied on March 28, 2012 and was

again denied upon reconsideration on January 14, 2013. (Tr. 98, 105). Upon Plaintiff's request, a

hearing was held before an Administrative Law Judge ("ALJ") on November 15, 2013. (Tr. 23).

An unfavorable decision was returned on March 13, 2014. (Tr. 20). On September 10, 2015, the

Appeals Council ("AC") denied Plaintiff's request for review, thus making the ALJ's decision

the final decision of the Commissioner. (Tr. 1-5). Plaintiff has exhausted all available

administrative remedies, and this case is now ripe for judicial review pursuant to 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

Specifically as it pertains to Plaintiff's assignments of error, the record contains conflicting evidence regarding Plaintiff's level of literacy. Medical records and testimony at the hearing indicate that Plaintiff took special education classes as a youth and that she has a limited ability to read, write, and spell. (See e.g. Tr. 46, 204, 256, 290, 306, 910). However, Plaintiff's school transcript specifically states that there were no records of Plaintiff being enrolled in special education or testing. (Tr. 195). In addition, Plaintiff indicated on her Disability Report that she had not attended special education classes. (Tr. 158).

## III. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…" 42. U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The court may not re-weigh the evidence or substitute its own judgment for that of the

Commissioner, even if it disagrees with the Commissioner's decision, so long as there is

substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456;

Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). Even if the undersigned were to find that

a preponderance of the evidence weighed against the Commissioner's decision, the

Commissioner's decision would have to be affirmed if supported by substantial evidence. Id.

The Fourth Circuit has articulated the following standard relevant to substantial evidence

review:

> the district court reviews the record to ensure that the ALJ's factual findings are
> supported by substantial evidence and that its legal findings are free of error. If the
> reviewing court decides that the ALJ's decision is not supported by substantial
> evidence, it may affirm, modify, or reverse the ALJ's ruling with or without
> remanding the cause for a rehearing. A necessary predicate to engaging in
> substantial evidence review is a record of the basis for the ALJ's ruling. The record
> should include a discussion of which evidence the ALJ found credible and why,
> and specific application of the pertinent legal requirements to the record evidence.
> If the reviewing court has no way of evaluating the basis for the ALJ's decision,
> then the proper course, except in rare circumstances, is to remand to the agency for
> additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

In the absence of meaningful factual development by the ALJ, a district court commits reversible

error by "mining facts from the … record." Brown v. Colvin, 2016 WL 502918, *1 (4th Cir.

February 9, 2016). Instead, courts are to "remand to avoid engaging in fact-finding 'in the first

instance' and to allow the ALJ to further develop the record so that … meaningful judicial

review [may occur]." Id. at *2 (quoting Radford, 734 F.3d at 296).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard under [Fed. R. Civ. P. 56]." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted).

IV.   SUBSTANTIAL EVIDENCE

1.  Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that the ALJ's decision is not supported by substantial evidence.

2.  The Sequential Evaluation Process

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.  An individual who does not have a "severe impairment" will not be found to be disabled;

c.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functioning capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The burden of production during the first four steps of the inquiry rests on the claimant. Pass v. Charter, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

**V.    The Administrative Decision**

In rendering his determination that Plaintiff was not disabled under the Act, the ALJ applied the five-step sequential evaluation process for evaluating claims for disability under the Act. (Tr. 23-34). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date she filed her application. (Tr. 25). At step two, the ALJ found that Plaintiff's major depressive disorder, a learning disorder, and poly-substance abuse in reported remission were severe impairments. (Tr. 25). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings. (Tr. 27-28). Then, the ALJ determined that Plaintiff, despite her impairments, had the RFC to perform the demands of work at all exertion levels. (Tr. 28). Additionally, Plaintiff was limited to simple tasks in which she would work with objects, rather than people. (Tr. 28). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 32). The ALJ proceeded to

5

step five, and determined that, in light of Plaintiff's RFC, age, education, and work experience, and based on the testimony of the vocational expert ("VE"), Plaintiff could perform jobs existing in significant numbers in the national economy, including unskilled jobs including cook helper, kitchen helper, and building cleaner. (Tr. 33). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 33-34).

## VI. DISCUSSION

### 1. Plaintiff's Assignments of Error

Plaintiff argues that the ALJ erred at Steps 3 and 5 of the sequential evaluation process. (Tr. 30). At Step 3, Plaintiff contends that the ALJ failed to consider the applicability of Listing 12.05(C) in his decision despite its relevance, and that this insufficient legal analysis makes it impossible to evaluate whether substantial evidence supports the ALJ's decision. Further, Plaintiff argues that at Step 5, the ALJ erred by not including Plaintiff's illiteracy in the residual functioning capacity ("RFC") and by relying upon VE testimony regarding jobs which require literacy.

### 2. First Assignment of Error: Applicability of Listing 12.05(C)

Plaintiff first contends that the ALJ erred in assessing her criteria for the Listings. Specifically, she argues that the ALJ failed to address the applicability of her impairments in regard to Listing 12.05(C). (Doc. 10 at 5). However, Defendant argues that the duty to identify the relevant listing was not triggered because there was insufficient evidence to support a determination that Plaintiff met Listing 12.05(C), and because the ALJ sufficiently explained why that was so by analyzing the evidence related to Plaintiff's learning disorder. (Doc. 12 at 5).

### A. *Overview of Listing of Impairments*

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, id. § 416.925(c)(3), or are medically equivalent to a listing, id. § 416.926, the claimant is considered disabled, id. § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Sullivan v. Zebley, 493 U.S. 521, 532 (1990); see also Bowen v. Yuckert, 482 U.S. 137, 153 (1987) (stating that the listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); see also Hancock v. Astrue, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530–31; see also 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. Id. § 416.925(d); see also Mecimore v. Astrue, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

An ALJ is not required to explicitly identify and discuss every possible listing that may apply to a particular claimant. Instead, the ALJ must provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Id. (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Meador v. Colvin, No. 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 Fed.Appx. 326, 328 (4th Cir. 2011)). Nevertheless, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Id.

### B.  Listing 12.05

The ALJ evaluated Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.09. (Tr. 27). However, Plaintiff contends the ALJ should have also evaluated her under Listing 12.05, which addresses intellectual disability. Listing 12.05 sets forth a two-part inquiry for determining intellectual disability: first, a claimant must satisfy the diagnostic description of the impairment, and second, a claimant must meet the required severity level, which may be accomplished by satisfying any one of four categories labeled A through D. Specifically, the Listing provides that:

8

Intellectual disability refers to a significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

…

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.05.

Accordingly, to satisfy Listing 12.05, there must first be an initial showing of deficits in adaptive functioning initially manifested before age 22 ("Prong 1"). Second, a claimant must satisfy one of four additional requirements identified as Requirements A-D. At issue in this case is Requirement C, which requires a "valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2"). Third, a claimant must show a "physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3"). 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.05. The burden is on the claimant to prove that her mental impairment meets or medically equals Listing 12.05. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) ("Through the fourth step [of the sequential evaluation process], the burden of production and proof is on the claimant.").

In this case, the ALJ did not explicitly address Listing 12.05 in his decision and the parties dispute whether the evidence prompts an analysis of Listing 12.05. Plaintiff contends that it does; Defendant contends that it does not. Specifically, Defendant contends that the evidence does not support a finding that Plaintiff has deficits in adaptive functioning which manifested before age 22 ("Prong 1"); that the evidence of record conflicts with regard to Plaintiff's literacy;

9

and that substantial evidence supports the ALJ's finding that Plaintiff can perform work existing

in significant numbers in the national economy. The court has considered whether the ALJ

sufficiently addressed the factors in this listing through analysis of other evidence, but for the

reasons explained herein, finds that there are too many gaps that the court must fill in order to

arrive at a conclusion as to Listing 12.05. See Torres v. Colvin, No. 1:14-CV-00007-RLV, 2016

WL 54933, at *9 (W.D.N.C. Jan. 5, 2016) ("It is neither the Commissioner's nor this Court's duty

to fill-in the gaps for the ALJ….the ALJ's opinion contains a lengthy summary of the evidence

that was before him; yet, when it came time to apply the relevant law to that summary of the

evidence, the ALJ's decision fell short. It is not this Court's job to engage in an analysis that the

ALJ should have done in the first instance."). Recognizing that an ALJ errs in failing to address a

relevant listing where medical records and other probative evidence support a claim of disability

under the listings, Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013), the court here finds that

remand is appropriate for the ALJ to address, in the first instance, why Plaintiff does or does not

satisfy Listing 12.05.

### a. Prong 1 – Adaptive Functioning Deficits

First, the court finds that there is substantial evidence to support a finding in this case that

Plaintiff meets Prong 1. At the very least, there is conflicting evidence in the record on this point

that merits discussion by the ALJ.

The Prong 1 diagnostic criteria for an intellectual disability includes two components—

deficits in adaptive functioning and an onset before age 22—that must both be satisfied in order

for the Listing to apply. Hancock, 667 F.3d at 475. The American Psychiatric Association

defines the "adaptive functioning deficits" at issue under Prong 1 as "limitations in areas such as

communication, self-care, home living, social/interpersonal skills, use of community resources,

self-direction, functional academic skills, work, leisure, health, and safety." See Jackson v. Astrue, 467 Fed. Appx. 214, 218 (4th Cir. 2012) (citing Atkins v. Virginia, 536 U.S. 304, 309 n.3 (2002)); Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000). Whether a claimant's deficits satisfy Prong 1 is a fact-specific inquiry and must be determined on a case-by-case basis. Richardson v. Colvin, No. 8:12-cv-03507, 2014 WL 793069, at *11 (D.S.C. Feb. 25, 2014) ("[W]hether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules.") (citation omitted). Thus, although cases interpreting Listing 12.05 provide some guidance, the factors that will satisfy this prong are unique to each case. Goble v. Colvin, No. 7:15-CV-00049-RN, 2016 WL 3198246, at *5 (E.D.N.C. June 8, 2016).

Here, there is evidence in the record to support a finding that Plaintiff has deficits in adaptive functioning with onset before age 22 so as to satisfy Prong 1. The ALJ found that Plaintiff suffers from severe impairments including: a major depressive disorder, a learning disorder, and polysubstance abuse in reported remission. (Tr. 25). He acknowledged that Plaintiff has difficulties reading, writing, and telling time, and further noted that Dr. Salmon diagnosed Plaintiff with mild intellectual disability which revealed Plaintiff reads on first grade level. (Tr. 30). The ALJ acknowledged that Plaintiff graduated from high school with a certificate rather than a diploma. (Tr. 33). Plaintiff stated to her therapist that she attended a special education school and stated at her hearing that she was bused to a different school because of a learning disability. (Tr. 30, 46, 195, 204). Ultimately the ALJ found no evidence to support Plaintiff's claim that she attended a special school, required modified classroom teaching, or needed an Individual Education Plan, (Tr. 30-31), noting that Plaintiff's school transcript specifically notated "no records in special education or testing." Id. However, Plaintiff's school records,

11

which show that she consistently received Ds in high school and failed the North Carolina

competency exam in 1990, support a finding of limitations in functional academic skills. (Tr.

195-98). As noted above, there is ample evidence in the record to support a finding that Plaintiff

has been unable to read or write as an adult despite twelve years of schooling. A November 2013

exam given by Dr. Salmon placed her at a first grade level in reading (which Dr. Salmon

characterized as being unable to read). (Tr. 915; 917). Poor school performance of the sort

present here is material to Listing 12.05's requirement of deficits in adaptive functioning during

the developmental period. See e.g., Turner v. Bowen, 856 F.2d 695, 699 (4th Cir. 1988) ("The

most important evidence…bearing on the application of § 12.05 is the testimonial and

documentary evidence throughout the record establishing that [claimant] was unable to read or

write at age sixteen even after ten grades of schooling—a clear 'manifestation' of mental

retardation occurring before age twenty-two."); Jackson v. Astrue, 467 F. App'x 214, 218 (4th

Cir. 2012) (finding that school records indicating participation in special education program to be

"directly material to the final prong of Listing 12.05C"); Smith v. Astrue, C.A. No. 3:10–66–

HMH–JRM, 2011 WL 846833, at *2 (D.S.C. March 7, 2011) (holding that documentation of

scholastic achievement "substantially below grade level ... demonstrat[ed] that [the plaintiff]

portrayed deficits in adaptive behavior during her developmental period"); Watson v. Astrue,

729 F. Supp. 2d 786, 788 (E.D.N.C. 2010) ("The totality of [the] [p]laintiff's school records

indicate that deficits in adaptive functioning manifested before the age of 22.").

There is also evidence in the record to support a finding of other adaptive functioning

deficits in home living and work. For example, Plaintiff has never held a job long term, has

scattered earnings records (Tr. 148-49), a series of abbreviated job attempts (Tr. 150-51) and no

past relevant work (Tr. 32). She also requires help from others to use recipes for food when

cooking and to order from a menu. (Tr. 916-17). She also reported that she "never had license – can't read" (Tr. 183) when asked if she drove, and reports that she cannot pay bills, handle a savings account, or use a checkbook/money order. Id. Such evidence merits discussion by the ALJ relevant to Listing 12.05.

The court notes that there is also evidence in the record to support a finding that Plaintiff does have sufficient adaptive functioning that might make her unqualified under Listing 12.05, as indicated by the following findings of the ALJ: Plaintiff has no difficulty maintaining her personal hygiene, preparing meals, cleaning, and shopping; Plaintiff was able to care for her pets and her children (before the children were removed from her custody); Plaintiff can count change, travel unaccompanied, walk around town, attend meetings, and socialize on a regular basis; Plaintiff was able to complete substance abuse programs and had adequate attention. Id. Further, Plaintiff has hobbies including watching television, fishing, and walking her dogs. Id.

While the evidence in this case could support a finding of deficits in adaptive functioning manifesting before age 22, it is not the role of this court to assess the evidence in the first instance. Because there is ample evidence in the record that could support a finding either way as to Prong 1, remand is appropriate for the ALJ to assess such evidence and make a determination as to the applicability of Listing 12.05. See Brown v. Colvin, No. 14-2106, 2016 WL 502918, at *2 (4th Cir. Feb. 9, 2016); Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013) (finding remand appropriate where "'there is at least conflicting evidence in the record'" as to whether [claimant] satisfied the listing….[and] the ALJ's failure to adequately explain his reasoning precludes this Court and the district court from undertaking a 'meaningful review'" of a determination under the listing).

13

### b. *Prongs 2 and 3*

The court notes that the remaining prongs of the 12.05(C) analysis do not appear to be in dispute. Prong 2 requires a valid IQ score between 60 and 70 in the verbal, performance, or full-scale area. Hancock, 667 F.3d at 473. The ALJ noted that intelligence testing showed Plaintiff obtained a verbal comprehension score of 63, a perceptual reasoning score of 71, a working memory score of 69, a processing speed score of 76, and a full scale IQ score of 64. (Tr. 30). In his report, the ALJ acknowledged and took into consideration that Plaintiff presented evidence of an IQ score of 64. Id. Furthermore, Defendant has conceded that Plaintiff here satisfies Prong 3, which requires a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.05. See Def. Mem. Brief (#12) at p. 4-5 ("The ALJ's step two findings establish that Plaintiff's major depressive disorder and poly-substance abuse in reported remission constitute an another impairment imposing an additional and significant work-related limitation of function…"). Here, because the parties do not appear to dispute the applicability of the second and third prongs, and because there is substantial evidence in the record to support applicability of the first prong, the court finds that remand is appropriate. On remand, the ALJ shall assess the evidence of record as it related to Listing 12.05 and make a determination as to whether Plaintiff meets that listing. See Brown, 2016 WL 502918, at *2 ("we do not accept [the parties'] invitations to review the medical record de novo to discover facts to support or refute the ALJ's finding at Step Three, and it was error for the district court to do so. Instead, we remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review in the event the case returns to us.") (citing Radford, 734 F.3d at 296).

### 3. Second Assignment of Error: Exclusion of Illiteracy when Determining Residual Functioning Capacity

Plaintiff further asserts that the ALJ did not consider the effects of her alleged illiteracy when he formulated her RFC. (Doc. 10 at 11). Illiteracy, defined as the inability to read or write, is considered a vocational factor, and thus, does not appropriately belong in the RFC. 20 C.F.R. § 416.964(b)(1). A claimant is illiterate if he or she "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." Id. "Generally, an illiterate person has had little or no formal schooling." Id. Relevant to the ALJ's finding that as Plaintiff had only a high school certificate, not a diploma, she was more commensurate with a person with a limited education level, (Tr. 33), the regulations define a "limited education" generally as formal education from 7th through 11th grade, with ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R. § 404.1564(b)(3). Plaintiff also contends that she cannot perform the three occupations that the ALJ found her capable of performing (kitchen helper, cook helper, and building cleaner) because they require a language level of 1 in the Dictionary of Occupational Titles ("DOT"). See U.S. Dep't of Labor, Dictionary of Occupational Titles § 222.687–010, 1991 WL 672130; § 318.687–014, 1991 WL 672756; § 381.687–018, 1991 WL 673258, (4th ed.1991). A language level of "1" means that the individual must be able to read 2,500 words at a rate of 95–120 words per minute. The individual must also be able to write simple sentences containing subject, verb and object and series of numbers, names and addresses. U.S. Dep't of Labor, Dictionary of Occupational Titles, Appendix C, 1991 WL 645958 (4th ed.1991). Plaintiff argues that because the ALJ found conflicting testimony on whether or not Plaintiff is illiterate, that the VE's

15

testimony that she could perform the cited jobs is inconsistent with the DOT's reading and writing requirements for these jobs. (Doc. 10 at 11).

The court need not fully analyze this assignment of error given that it found that remand is appropriate based on Plaintiff's first assignment of error. However, as the ALJ's assessment of evidence in the context of Listing 12.05 on remand should include attention to the limitations in literacy that Plaintiff has alleged in this case, the ALJ should give additional consideration to the way in which a limitation in literacy would affect Plaintiff's ability to perform work in the national economy. Here, where there appears to be conflicting evidence in the record as to Plaintiff's ability to read and write, the ALJ must consider such limitations in determining her ability to work.

## VII.    CONCLUSION

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence.  See Perales, 402 U.S. at 390; Hays, 907 F.2d at 1456.  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be reversed and remanded for further proceedings consistent with this Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (#9) is **GRANTED**;

2. Defendant's Motion for Summary Judgment (#11) is **DENIED**;

3. the decision of the Commissioner, denying the relief sought by Plaintiff, is **REVERSED**;

4. and this action is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

Signed: July 11, 2016

Max O. Cogburn Jr
United States District Judge